UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.*,

        Debtor.

Case No. 6:07-bk-00761-KSJ
Chapter 11
Substantively Consolidated

_____/

SONEET R. KAPILA, as CHAPTER 11
TRUSTEE for TRANS CONTINENTAL
AIRLINES, INC.,

        Plaintiff,

v.

Adv. P. No. 6:09-ap-00655-KSJ

HAZEL BELOTTI, ESTATE OF HAZEL
BELOTTI, by and through its UNKNOWN
PERSONAL REPRESENTATIVE, or ALL
UNIDENTIFIED BENEFICIARIES of the
ESTATE OF HAZEL BELOTTI,

        Defendant.

_____/

## TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Soneet R. Kapila, as Chapter 11 Trustee ("Trustee"), responds to the Motion to Dismiss filed by Defendants Hazel Belotti, Estate of Hazel Belotti, by and through its unknown personal representative, and all unidentified beneficiaries of the Estate of Hazel Belotti ("Defendants").

Defendants' motion is based on material that is outside the "four corners" of the First Amended Complaint rendering the Motion to Dismiss improper.[1]  Further, Defendants do not

---

[1] While certain motions to dismiss (i.e., lack of personal jurisdiction, insufficient process, etc.) properly look outside the "four corners" of the pertinent pleading, Defendants Motion to Dismiss was presumably filed under Rule 12(b)(6), which does not permit consideration of facts outside those in the pertinent pleading.

{22758878;1}

attach any affidavits or other material (properly authenticated) proving the facts underlying the arguments made in the Motion to Dismiss. Moreover, even assuming Defendants were permitted to make these arguments in a motion to dismiss and had attached proper affidavits or other evidence (authenticated with proper affidavits), dismissal is still improper because the California law relied upon by Defendants does not bar this Adversary Proceeding because it was timely filed *before* the death of the personal representative of the Estate of Hazel Belotti (i.e., George Belotti). Accordingly, the Court should deny the Motion to Dismiss.

## FACTUAL BACKGROUND[2]

### The EISA Investment Program

1. Louis J. Pearlman and others executed a scheme (the "EISA Investment Program") to defraud investors of money and property by means of offering "investments" in bank accounts operated by TCA. See First Amended Complaint, ¶ 6.

2. From as early as 1989 through January 2007, Pearlman and others offered members of the public the opportunity to earn above-market interest by investing funds in an Employee Investment Savings Account ("EISA") maintained by TCA that would earn above-market rates of return because of TCA's business contacts and its status as a strong charter airline. See First Amended Complaint, ¶ 9.

3. The EISA Investment Program was a Ponzi scheme. See First Amended Complaint, ¶ 7. Funds paid by newer investors as part of the EISA Investment Program were used to repay prior investors and/or pay "interest" to prior investors in the EISA Investment

---

[2] In evaluating the sufficiency of a complaint in light of a motion to dismiss, the pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994-95. Generally, in conducting this analysis, the Court is also confined to the four corners of the complaint and its incorporated exhibits. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir.1997). The Court is permitted, however, to consider certain documents referred to in the complaint by the plaintiff when those documents are central to the plaintiff's claim. Id. at 1369. For example, the First Amended Complaint explicitly refers to Mr. Pearlman's plea agreement.

{22758878;1}

Program. See First Amended Complaint, ¶ 13. The "interest" payments were paid as purported profits -- i.e., amounts in excess of the principal amount invested by the investors. See First Amended Complaint, ¶ 14. The source of these "interest" payments was not from bona fide returns on investments of the funds by TCA, but rather from funds received from other new investors seeking to invest in the EISA Investment Program. See First Amended Complaint, ¶ 15.

4.     On March 4, 2008, in the case captioned United States of America v. Louis J. Pearlman, Case No. 6:07-CR-97-ORL-18DAB, United States District Court, Middle District of Florida, the United States Attorney filed the Plea Agreement signed by Louis J. Pearlman (Dkt. No. 39). See First Amended Complaint, ¶ 16. In the Plea Agreement, Mr. Pearlman admitted, among other things, that the EISA Investment Program was a Ponzi scheme. See First Amended Complaint, ¶ 17.

### Transfers to Defendant

5.     Within four years preceding March 1, 2007 (the "Petition Date"), TCA transferred money to, or for the benefit of, Defendants through the EISA Investment Program, as reflected in **Exhibit A,** which is attached and incorporated herein. The document attached as **Exhibit A** is the same document attached as **Exhibit A** to the First Amended Complaint.

### Death of Certain Belotti Family Members and Failure to Notice Trustee

6.     According to the Motion to Dismiss, Hazel Belotti and certain of the other Defendants (Grant Belotti and George Belotti), all of whom were apparently beneficiaries or representatives of the Estate of Hazel Belotti, are deceased. See Motion to Dismiss, ¶¶ 1, 3, and 5. According to the Motion to Dismiss, the pertinent Belottis passed away on the following dates:

- Hazel Belotti – December 30, 1995;

{22758878;1}

- Grant Belotti – August 12, 2007; and
- George Belotti – June 15, 2009.

See Motion to Dismiss, ¶¶ 1, 3, and 5.

7. The Motion to Dismiss does not have attached any affidavits or other documents (properly authenticated) proving the death of these individuals or any other facts in the Motion to Dismiss.[3]

8. Trustee concedes that Grant Belotti is deceased; the Estate of Grant Belotti sent notice to Trustee of Grant Belotti's death because a copy of the Notice of Administration of the Estate of Grant Belotti was sent to Trustee in 2009. See Declaration of Samual A. Miller, ¶ 3.

9. George Belotti, explicitly identified as the Estate Administrator of the Estate of Hazel Belotti, was copied on the Notice of Administration of the Estate of Grant Belotti that was sent to Trustee. See Declaration of Samual A. Miller, ¶ 4. George Belotti, therefore, presumably knew of the Trustee's claim.

10. The address to which notice was sent to George Belotti is the exact same address to which the four separate $100,000 checks, dated from March 2003 through July 2005, were sent from the Ponzi schemes to "Estate of Hazel Belotti." See Declaration of Samual A. Miller, ¶ 5. Significantly, that is the same exact address to which the original complaint was served pursuant to the applicable Bankruptcy Rules. See Dkt No. 5.

11. Despite George Belotti's presumptive knowledge of Trustee's claim, George Belotti's estate[4] never sent notice of George Belotti's apparent death to Trustee's counsel.

---

[3] Motions characterized as motions to dismiss for failure to state a claim that present matters outside the pertinent pleadings should be treated as motions for summary judgment under Rule 56. See Fed. R. Civ. P. 12(d). Of course, failure to present affidavits or other evidence (authenticated with proper affidavits) in support of the facts relied upon in a motion for summary judgment is fatal to such motion. See Fed. R. Civ. P. 56.

[4] Assuming, of course, that defendants are correct and George Belotti is deceased (again, defendants have not attached any affidavits or other documents (properly authenticated).

### Notice of Appearance of Broad and Cassel
### BEFORE Apparent Death of George Belotti and Lack of Notice to Truatee

12. According to the Motion to Dismiss, George Belotti died on June 15, 2009.

13. The original Complaint in this Adversary Proceeding was filed on March 30, 2009, two and a half months prior to George Belotti's death.

14. On May 11, 2009, after the complaint was filed, but approximately one month before the death of George Belotti, Broad & Cassel, through attorney Nicolette Vilmos, filed a notice of appearance on behalf of all Defendants (including Grant Belotti, who was apparently dead at the time, and George Belotti, who was alive at the time). See Dkt. No. 6.

15. Until the filing of the Motion to Dismiss, Broad & Cassel never notified the Court or Trustee's counsel of the death of George Belotti or any of the other apparent representatives or beneficiaries of the Estate of Hazel Belotti.

## ARGUMENT

### Standard of Review

In reviewing a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), courts must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Financial Security Assur., Inc. v. Stephens, Inc., 450 F.3d 1257, 1262 (11th Cir.2006). Dismissal is appropriate under Rule 12(b)(6) only if the plaintiff "can prove no set of facts that would support the claims in the complaint." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir.2003).

### Defendants Rely Upon Matters Outside the First Amended Complaint

The Court should deny the Motion to Dismiss because it relies upon materials outside the First Amended Complaint. As noted above in footnote 2, generally, in conducting an analysis of a motion to dismiss for failure to state a claim, the Court is confined to the four corners of the

complaint and its incorporated exhibits. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir.1997). The facts of the deaths of various members of the Belotti family as well as the appointment of trustees of the Belotti trusts and representatives of the Estate of Hazel Belotti were never discussed or addressed in the original Complaint or the First Amended Complaint. Such motion practice is improper at this stage under the applicable rules of procedure. Accordingly, the Court should deny the Motion to Dismiss.

### Defendants Do Not Attach Any Affidavits or Other Evidence (Authenticated with Proper Affidavits) Proving the Facts Underlying the Arguments Made in the Motion to Dismiss

Because Defendants rely upon materials outside the First Amended Complaint, the Court should treat the Motion as one for summary judgment under Rule 56. See Fed. R. Civ. P. 12(d) ("[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").[5] The summary judgment rule requires that materials considered for summary judgment must be admissible or usable at trial. See Fed. R. Civ. P. 56(c)(1) (identifying the requirements for support for factual positions); see generally Wright, Miller & Kane Federal Practice and Procedure: Civil 3d § 2721 (discussing the materials to be considered for a summary judgment motion and explaining that "[t]he court may consider any material that would be admissible or usable at trial.").

Defendants do not provide any admissible evidence to support the factual allegations or factual positions in the Motion to Dismiss. Instead, Defendants apparently want the Court to rely upon the unsubstantiated and un-authenticated factual assertions in the Motion. For example, defendants do not provide any admissible evidence of (i) the death of any Belotti family

---

[5] Rule 12(d) further provides that, if the motion is to be treated as one for summary judgment,"[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

{22758878;1}

member; (ii) the identity of any the representative(s) of the Estate of Hazel Belotti (or subsequent representatives); (iii) the death of every representative of and beneficiary of the Estate of Hazel Belotti. The Rules do not permit dismissal or summary judgment under these circumstances (i.e., going outside the 4 corners of the complaint) or without more (i.e., admissible evidence). Accordingly, the Court should deny the Motion to Dismiss.

### California Law Does Not Automatically Bar Trustee's Claim

Defendants' reliance upon Section 366.2 of the California Code of Civil Procedure is misplaced. Section 366.2 of the California Code of Civil Procedure provides a statute of limitations for the commencement of an action against a deceased California citizen, namely requiring that such an action be commenced within one year of that citizen's death. Specifically, Section 366.2 of the California Code of Civil Procedure provides in pertinent part:

> (a) If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, *an action may be commenced within one year after the date of death*, and the limitations period that would have been applicable does not apply.

23 Code Civ. Pro. § 366.2. This statute does not apply because this Adversary Proceeding was commenced *BEFORE* the death of George Belotti,[6] the personal representative of the Estate of Hazel Belotti. Accordingly, this Adversary Proceeding was commenced prior to the expiration of the one-year statute of limitations as it relates to the death of George Belotti.

---

[6] The Motion to Dismiss implies that George Belotti was a personal representative of the Estate of Hazel Belotti. See Motion to Dismiss, ¶ 2. Moreover, the Notice of Administration of the Estate of Grant Belotti explicitly identifies George Belotti as the Estate Administrator of the Estate of Hazel Belotti. The Complaint and First Amended Complaint, both identified defendants as including the personal representatives of Hazel Belotti. Of course, at the time of the filing of the Complaint, Trustee did not know the precise identification of the personal representative of the Estate of Hazel Belotti and, therefore, identified the Defendants as precisely as possible and served the Complaint, according to the applicable Bankruptcy Rules, at the last known and proper address (which address, not coincidentally, is the same address of George Belotti).

{22758878;1}

Moreover, Section 9000, et seq. of the California Probate Code deals with claims by creditors. Section 9050 requires the personal representative to give notice of administration of the estate to known or reasonably ascertainable creditors of the decedent, which much be given within the later of (a) four months after the date the letters are first issued, or (b) thirty days after the personal representative first has notice of the creditor. Calif. Civil Code § 9052. As does not appear to be disputed, Trustee never received notice of George Belotti's death, despite the fact that George Belotti knew well of Trustee's claim.

## CONCLUSION

Defendants have clearly gone outside the "four corners" of the First Amended Complaint, which makes the Motion to Dismiss improper. Further, Defendants do not attach any affidavits or other documents (properly authenticated) proving the facts underlying the arguments made in the Motion to Dismiss. Moreover, even assuming Defendants were permitted to make these arguments in a motion to dismiss and had attached proper affidavits or other documents (properly authenticated), dismissal is still improper because Trustee never received notice of the pertinent deaths of the Defendants despite certain of the Defendant(s) (e.g., George Daniel Belotti) having knowledge of this Adversary Proceeding. Accordingly, the Court should deny the Motion to Dismiss.

{22758878;1}

Dated: December 12, 2011

/s/ *James E. Foster*
James E. Foster, Esq.
Florida Bar No. 0142015
Samual A. Miller, Esq.
Florida Bar No. 0034991
**AKERMAN SENTERFITT**
420 South Orange Avenue, Suite 1200
Orlando, Florida 32801-4904
Phone: (407) 423-4000
Fax: (407) 843-6610

and

Michael I. Goldberg, Esq.
Florida Bar No.: 886602
Las Olas Centre II, Suite 1600
350 East Las Olas Blvd.
Ft. Lauderdale, FL 33301-2229
Phone: (954) 463-2700
Fax: (954) 463-2224
E-mail: Michael.Goldberg@akerman.com
**COUNSEL FOR SONEET R. KAPILA,
CHAPTER 11 TRUSTEE**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on December 12, 2011, a true and correct copy of the foregoing has been served through the Court's CM/ECF electronic filing system upon:

Nicolette C. Vilmos, Esq.
Douglas A. Goldin, Esq.
Broad and Cassel
390 N. Orange Ave., Suite 1400
Orlando, FL 32801

/s/ *James E. Foster*
James E. Foster, Esq.

{22758878;1}

**Louis J. Pearlman**
Case No. 6:07-bk-00761-ABB
United States Bankruptcy Court
Middle District of Florida
Orlando Division

**EISA Investor - Estate of Hazel Belotti**

| Transaction Date | Transaction Type | Check Date | Check # | Deposits | Withdrawals | (Withdrawals) over Deposits |
|---|---|---|---|---|---|---|
| 01/05/89 | Deposit | | | 1,471.36 | | 1,471.36 |
| 01/20/89 | Deposit | | | 1,471.36 | | 2,942.72 |
| 02/03/89 | Deposit | | | 1,471.36 | | 4,414.08 |
| 02/16/89 | Deposit | | | 1,471.36 | | 5,885.44 |
| 03/02/89 | Deposit | | | 1,471.36 | | 7,356.80 |
| 03/16/89 | Deposit | | | 1,471.37 | | 8,828.17 |
| 03/17/89 | Deposit | | | 63,767.69 | | 72,595.86 |
| 03/30/89 | Deposit | | | 1,471.36 | | 74,067.22 |
| 04/12/89 | Deposit | | | 1,471.36 | | 75,538.58 |
| 04/24/89 | Deposit | | | 679.22 | | 76,217.80 |
| 04/27/89 | Deposit | | | 1,471.36 | | 77,689.16 |
| 05/12/89 | Deposit | | | 1,471.36 | | 79,160.52 |
| 05/26/89 | Deposit | | | 1,535.85 | | 80,696.37 |
| 06/09/89 | Deposit | | | 1,535.85 | | 82,232.22 |
| 06/22/89 | Deposit | | | 1,535.86 | | 83,768.08 |
| 07/06/89 | Deposit | | | 1,535.85 | | 85,303.93 |
| 07/20/89 | Deposit | | | 1,535.85 | | 86,839.78 |
| 08/03/89 | Deposit | | | 1,535.85 | | 88,375.63 |
| 08/16/89 | Deposit | | | 1,535.85 | | 89,911.48 |
| 08/31/89 | Deposit | | | 1,535.85 | | 91,447.33 |
| 09/14/89 | Deposit | | | 1,535.86 | | 92,983.19 |
| 09/28/89 | Deposit | | | 1,535.85 | | 94,519.04 |
| 10/25/89 | Deposit | | | 1,535.85 | | 96,054.89 |
| 11/08/89 | Deposit | | | 1,535.85 | | 97,590.74 |
| 11/22/89 | Deposit | | | 1,622.97 | | 99,213.71 |

Exhibit A

## Louis J. Pearlman
### Case No. 6:07-bk-00761-ABB
### United States Bankruptcy Court
### Middle District of Florida
### Orlando Division

### EISA Investor - Estate of Hazel Belotti

| Transaction Date | Transaction Type | Check Date | Check # | Deposits | Withdrawals | (Withdrawals) over Deposits |
|---|---|---|---|---|---|---|
| 12/07/89 | Deposit | | | 1,692.81 | | 100,906.52 |
| 12/20/89 | Deposit | | | 1,692.81 | | 102,599.33 |
| 01/04/90 | Deposit | | | 1,542.57 | | 104,141.90 |
| 01/18/90 | Deposit | | | 1,542.58 | | 105,684.48 |
| 01/31/90 | Deposit | | | 1,542.57 | | 107,227.05 |
| 02/15/90 | Deposit | | | 1,542.58 | | 108,769.63 |
| 04/02/90 | Withdrawal | | | | (15,000.00) | 93,769.63 |
| 05/09/90 | Deposit | | | 982.54 | | 94,752.17 |
| 05/24/90 | Deposit | | | 826.72 | | 95,578.89 |
| 06/07/90 | Deposit | | | 982.54 | | 96,561.43 |
| 06/22/90 | Deposit | | | 826.71 | | 97,388.14 |
| 07/05/90 | Deposit | | | 982.54 | | 98,370.68 |
| 07/20/90 | Deposit | | | 826.71 | | 99,197.39 |
| 08/01/90 | Deposit | | | 982.54 | | 100,179.93 |
| 08/16/90 | Deposit | | | 826.72 | | 101,006.65 |
| 08/29/90 | Deposit | | | 982.54 | | 101,989.19 |
| 09/13/90 | Deposit | | | 826.71 | | 102,815.90 |
| 09/27/90 | Deposit | | | 982.54 | | 103,798.44 |
| 10/11/90 | Deposit | | | 826.72 | | 104,625.16 |
| 10/26/90 | Deposit | | | 982.53 | | 105,607.69 |
| 11/07/90 | Deposit | | | 826.72 | | 106,434.41 |
| 11/23/90 | Deposit | | | 982.54 | | 107,416.95 |
| 12/06/90 | Deposit | | | 826.72 | | 108,243.67 |
| 12/19/90 | Deposit | | | 826.71 | | 109,070.38 |
| 01/03/91 | Deposit | | | 827.59 | | 109,897.97 |

# Louis J. Pearlman

Case No. 6:07-bk-00761-ABB
United States Bankruptcy Court
Middle District of Florida
Orlando Division

## EISA Investor - Estate of Hazel Belotti

| Transaction Date | Transaction Type | Check Date | Check # | Deposits | Withdrawals | (Withdrawals) over Deposits |
|---|---|---|---|---|---|---|
| 01/17/91 | Deposit | | | 1,139.22 | | 111,037.19 |
| 02/01/91 | Deposit | | | 827.59 | | 111,864.78 |
| 02/15/91 | Deposit | | | 983.41 | | 112,848.19 |
| 02/27/91 | Deposit | | | 827.59 | | 113,675.78 |
| 12/27/93 | Withdrawal | | | | (30,000.00) | 83,675.78 |
| 12/31/95 | Withdrawal | | | | (17,468.56) | 66,207.22 |
| 03/24/03 | Withdrawal | 05/21/03 | 12343 | | (100,000.00) | (33,792.78) |
| 02/25/04 | Withdrawal | 03/04/04 | 13906 | | (100,000.00) | (133,792.78) |
| 01/05/05 | Withdrawal | 01/18/05 | 17113 | | (100,000.00) | (233,792.78) |
| 07/01/05 | Withdrawal | 07/07/05 | 18757 | | (100,000.00) | (333,792.78) |
| | | | | $ 128,675.78 | $ (462,468.56) | $ (333,792.78) |

**Recoverable Profits Paid Within the 4 Year Period/Unjust Enrichment Payment**

| Transaction Date | Transaction Type | Check Date | Check # | Payment | Amount of Recovery |
|---|---|---|---|---|---|
| 07/01/05 | Withdrawal | 07/07/05 | 18757 | 100,000.00 | 100,000.00 |
| 01/05/05 | Withdrawal | 01/18/05 | 17113 | 100,000.00 | 100,000.00 |
| 02/25/04 | Withdrawal | 03/04/04 | 13906 | 100,000.00 | 100,000.00 |
| 03/24/03 | Withdrawal | 05/21/03 | 12343 | 100,000.00 | 33,792.78 |
| | | | | $ 400,000.00 | $ 333,792.78 |

**Recoverable Profits Paid Within the 2 Year Period**

| Transaction Date | Transaction Type | Check Date | Check # | Payment | Amount of Recovery |
|---|---|---|---|---|---|
| 07/01/05 | Withdrawal | 07/07/05 | 18757 | 100,000.00 | 100,000.00 |
| | | | | $ 100,000.00 | $ 100,000.00 |